UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| EDNA LASSAIR,<br>　　　　　Plaintiff,<br><br>　　v.<br><br>ROBERT WILKIE, SECRETARY, DEPARTMENT OF VETERANS AFFAIRS,<br>　　　　　Defendant. | No. 2:17-01638-RAJ<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

This matter comes before the Court on Defendant's Motion for Summary Judgment (Dkt. # 30). Having considered the submissions of the parties, the relevant portions of the record, and the applicable law, the Court finds that oral argument is unnecessary. For the reasons stated below, Defendant's Motion is **GRANTED**. Dkt. # 30.

## I.　BACKGROUND

Plaintiff Edna Lassair ("Plaintiff" or "Ms. Lassair") is a former employee of the VA who began working in 2008 as a Rating Veterans Service Representative ("RSVR"). Dkt. # 12 at p. 2, ¶ 3. Her position entailed reviewing veterans' medical and military records to make service connected disability decisions. *Id*. All raters are required to meet quantity and quality standards. Dkt. # 32 at ¶ 3. Raters are required to review a certain number of cases each day and their work is reviewed by a Decision Review Officer ("DRO") to determine if the ratings contain errors. *Id*. at ¶¶ 4-5.

ORDER-1

Quantity and quality standards are based on an employee's general schedule ("GS") grade level, so raters in a higher grade are typically required to meet higher quality and production standards. *Id.*

In 2009, Plaintiff's work coach issued her a written counseling due to unacceptable performance. Dkt. # 1-2 at ¶ 6. Plaintiff alleges this is because her DRO at the time, John Dick, was taking a long time to review her cases and that he was discriminating against her based on her age. Dkt. # 31-1, Ex. A at p. 25:16-25. After Plaintiff complained that Mr. Dick was taking too long to review her work, her cases were redistributed to other reviewers in October 2009. Dkt. # 31-1, Ex. A at p. 23:9-12. For the remainder of October 2009, Plaintiff corrected the errors that the new reviewers identified in her work. *Id.* at p. 22:8-11.

Plaintiff's performance issues continued into 2010 and 2011 as documented by the Performance Improvement Plan ("PIP") she was placed on in April 2010, that was continued in January 2011. Dkt. # 33 at ¶ 4; Dkt. # 34 at ¶ 22. Plaintiff also began working from home in 2011 and claims that she had problems with her work disappearing from the system. Dkt. # 31-1, Ex. A at p. 58:2-20. In May 2011, the VA issued Plaintiff a "Warning of Unacceptable Performance—Performance Improvement Plan," which rescinded the prior PIP and issued a new one. Dkt. # 32 at ¶ 9. After receiving the new PIP, Plaintiff contacted the EEOC in June 2011, alleging that the issuance of the PIP created a hostile work environment based on her race, age, and disability. Dkt. # 12-1. As a remedy, she sought to have the agency remove her from the PIP. *Id.*

In August 2011, the parties participated in a mediation and reached a settlement agreement. Dkt. # 12 at p. 2, ¶ 5. Plaintiff signed the agreement, and so did both her Representative and Chief Union Steward. Dkt. # 12-2. The settlement agreement stated that in exchange for certain undertakings by the VA, Plaintiff would "waive," among other rights, "all other civil or administrative proceedings of the Complaint or issues

ORDER-2

related to it in whatever forum," and also "release VA and all of its officers, agents, and employees from all claims that she has or may have against them arising out of the events and circumstances related to the Complaint." *Id.*

In March 2012, Plaintiff filed a notice alleging breach of the settlement agreement. Dkt. # 12 at p. 3, ¶ 7. The Office of Resolution Management ("ORM") determined that agency did not breach the settlement agreement. Dkt. # 14 at pp. 16-17, ¶¶ 5-6. However, the ORM held that the settlement agreement was not enforceable because it did not contain a waiver under the Older Workers Benefit Protection Act ("OWBPA"). *Id.* at p. 18, ¶ 9. The decision was ultimately appealed to the EEOC which held that the failure to include an OWBPA waiver voided only Plaintiff's settlement of her claim under the ADEA but did not void the settlement agreement as to her other discrimination claims. Dkt. # 12-4. Plaintiff voluntarily resigned her position with the VA effective January 31, 2014. Dkt. # 12 at p. 3, ¶ 10. She has not worked for the VA since her resignation. *Id.*

In July 2018, Plaintiff filed a lawsuit in state court asserting claims of discrimination based on race, disability, and age. Dkt. #3-1. Defendant removed the case to this Court. Dkt. #1. On March 23, 2018, Defendant filed a Motion for Summary Judgment. Dkt. # 14. The Court granted summary judgment, finding that Plaintiff's claims were barred by the settlement agreement, with the exception of Plaintiff's allegations related to age discrimination. Dkt. # 17. The Court gave Plaintiff leave to file an amended complaint asserting an age discrimination claim. *Id.* On August 31, 2018, Plaintiff filed an Amended Complaint asserting age discrimination under the Age Discrimination in Employment Act ("ADEA"). Dkt. # 18. Defendant now moves for summary judgment as to Plaintiff's remaining claim. Dkt. # 30.

## II.  LEGAL STANDARD

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R.

ORDER-3

Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). On an issue where the nonmoving party will bear the burden of proof at trial, the moving party can prevail merely by pointing out to the district court that there is an absence of evidence to support the non-moving party's case. *Celotex Corp.*, 477 U.S. at 325. If the moving party meets the initial burden, the opposing party must set forth specific facts showing that there is a genuine issue of fact for trial in order to defeat the motion. *Anderson v. Liberty Lobby*, Inc., 477 U.S. 242, 250 (1986). The court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150-51 (2000).

However, the court need not, and will not, "scour the record in search of a genuine issue of triable fact." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996); *see also White v. McDonnel-Douglas Corp.*, 904 F.2d 456, 458 (8th Cir. 1990) (the court need not "speculate on which portion of the record the nonmoving party relies, nor is it obliged to wade through and search the entire record for some specific facts that might support the nonmoving party's claim"). The opposing party must present significant and probative evidence to support its claim or defense. *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991). Uncorroborated allegations and "self-serving testimony" will not create a genuine issue of material fact. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002); *T.W. Elec. Serv. v. Pac Elec. Contractors Ass'n*, 809 F. 2d 626, 630 (9th Cir. 1987).

### III. DISCUSSION

#### A. **<u>Plaintiff's Discrimination Claims are Untimely</u>**

Defendant argues that nearly all of Ms. Lassair's allegations of age discrimination occurred prior to April 24, 2011 and are time-barred. Dkt. # 30 at 8-9. Federal employees who believe they have been discriminated against on the basis of age have the option to pursue administrative remedies or file a complaint directly in federal court. *Shelley v. Geren*, 666 F.3d 599, 605 (9th Cir. 2012). Under EEOC guidelines, an aggrieved federal employee must consult an EEO counselor within 45 days of an alleged discriminatory act. 29 C.F.R. § 1614.105(a)(1). After exhausting the administrative remedies by waiting 180 days after filing the administrative action with the EEOC, or upon receiving a final agency determination, the employee may file a civil action in district court. 29 C.F.R. § 1614.201(c). If the employee chooses to bypass the administrative action and file directly in district court, the employee must notify the EEOC of its intent to file within 180 days of the alleged discriminatory conduct and wait 30 days before filing. 29 U.S.C. § 633a(d); 29 C.F.R. § 1614.201(a). Absent waiver, estoppel, or equitable tolling, failure to comply with these regulations is "fatal to a federal employee's discrimination claim." *Lyons v. England*, 307 F.3d 1092, 1105 (9th Cir. 2002).

Here, it appears that Ms. Lassair opted to pursue administrative action when she contacted the EEO counselor on June 8, 2011. Dkt. # 36-1, Ex. J. Thus, any allegedly discriminatory acts occurring before April 24, 2011 (45 days before she contacted the EEOC) are untimely. As Defendant notes, nearly all of the allegations in Ms. Lassair's amended complaint appear to have occurred prior to April 24, 2011. This includes allegations regarding Mr. Dick's allegedly discriminatory comments and failure to review her work in 2009, the delay in her ladder promotion in 2009, her exclusion from the "Nehmer" project in 2010, the written counseling that she received prior to April 2011, and the initial PIP that she was placed on in 2010.

ORDER-5

Ms. Lassair argues that her claims are timely because the EEO officer considered her earlier allegations in its review of her hostile environment claim. Dkt. # 6 at 7. This argument fails for two reasons. First, the EEO officer's evaluation of allegations occurring prior to April 24, 2011, is not a waiver of the exhaustion timeliness requirements. *Boyd v. U.S. Postal Serv.*, 752 F.2d 410, 414 (9th Cir. 1985) ("The mere receipt and investigation of a complaint does not waive objection to a complainant's failure to comply with the original filing time limit when the later investigation does not result in an administrative finding of discrimination."). An agency may waive a timeliness objection by making an express finding that the complaint was timely or failing to appeal an EEOC determination of timeliness. *Bruce v. United States Dept. of Justice*, 314 F.3d 71, 74 (2d Cir. 2002) (emphasis added).

Here, the EEOC did not make a finding that Ms. Lassair's discrimination allegations were timely. Instead, it appears that the EEO officer acknowledged that Ms. Lassair's earlier allegations were not timely but opted to still consider them as part of a "continuing violation" theory with respect to her hostile work environment claim. Dkt. # 36-1, Ex. L. *Id.; see also Valadez v. Potter,* No. C06-0329RSL, 2008 WL 426504, at *3 (W.D. Wash. Feb. 13, 2008) (holding timeliness requirement was not waived where agency did not make finding of discrimination or make a finding that the filing was timely); *Ford v. United States*, No. C 11-00498 SI, 2011 WL 3516129, at *6 (N.D. Cal. Aug. 11, 2011) ("[T]he acceptance of an untimely complaint for administrative investigation does not waive the right of a federal agency to subsequently object to the timeliness of the complaints.").

In addition, Ms. Lassair's reliance on *Nat'l R.R. Passenger Corp. v. Morgan* is misplaced. In *Morgan*, the Supreme Court held "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002). Actions such as failure to train, discipline, and denial of promotions are all considered "discrete

acts." *Id.* at 114 (holding discrete acts include denial of a promotion, suspension, and denial of training). Accordingly, Plaintiff's allegations that she received written counseling and warnings regarding her performance in 2009 through April 11, 2011, was denied training in 2009, had her promotion delayed in 2009, was not assigned to the "Nehmer project" in 2010, and she was placed on a PIP in 2010 that was extended in January 2011, are all untimely.

### B. Prima Facie Case of Age Discrimination

Even if Ms. Lassair's allegations were timely, her age discrimination claim must also fail because she has not established a prima facie case of discrimination. The ADEA prohibits an employer from discriminating "because of [an] individual's age." *Shelley v. Geren*, 666 F.3d 599, 606-07 (9th Cir. 2012) (citing 29 U.S.C. § 623(a)(1)); 29 U.S.C. § 633a(a). The ADEA applies to protect federal employees and applicants for federal employment. 29 U.S.C. § 633a(a). A plaintiff can show discrimination by presenting either direct evidence or indirect evidence. *Enlow v. Salem–Keizer Yellow Cab Co., Inc.*, 389 F.3d 802, 812 (9th Cir. 2004). In cases like this one where there is no direct evidence of discrimination, Plaintiff may prove discrimination using indirect, or circumstantial evidence, under the burden-shifting framework established in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973). *Shelley,* at 608; *Salas v. Indep. Elec. Contractors Inc.*, No. 11-1748 RAJ, 2013 WL 1898249, at *5 (W.D. Wash. May 7, 2013), aff'd, 603 F. App'x 607 (9th Cir. 2015) (applying *McDonnell Douglas* test to ADEA claim on summary judgment).

Under the *McDonnell Douglas* framework, the plaintiff has the initial burden of establishing a prima facie case of discrimination by a preponderance of the evidence. *Shelley,* at 608. If she succeeds in making out a prima facie case, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for its actions. *McDonnell Douglas*, at 802. It is then the plaintiff's responsibility to establish that the

ORDER-7

defendant's stated reason was merely pretext and that the true reason was discriminatory. *Id.*

To establish a prima facie case of discrimination under the ADEA, Plaintiff must show that: (1) she belongs to a protected group; (2) she performed her job satisfactorily, (3) she suffered an adverse employment action, and (4) a substantially younger employee was treated more favorably. *Coleman v. Quaker Oats Co.,* 232 F.3d 1271, 1281 (9th Cir. 2000). Here, Ms. Lassair has failed to establish that she suffered an adverse employment action and that a substantially younger employee was treated more favorably.

Plaintiff argues that she suffered an adverse employment action when she was placed on a PIP due to her supervisor's delay in reviewing her cases. Dkt. # 36 at 8. But PIPs that do not impact an employee's compensation or terms of employment are not adverse actions. *Hopkins v. McDonald*, No. C15-1918RSL, 2016 WL 3617860, at *3 n.2 (W.D. Wash. July 6, 2016) ("A written warning that does not change the terms and conditions of employment does not rise to the level of an adverse employment action."); *Sumera v. Lynch,* No. 4:13-CV-01950-KAW, 2016 WL 368159, at *6 (N.D. Cal. Feb. 1, 2016) ("PIP . . . did not materially affect the terms and conditions of employment and therefore [was] not adverse employment action[].") (internal citations omitted); *Cozzi v. Cty. of Marin,* 787 F. Supp. 2d 1047, 1061 (N.D. Cal. 2011) ("Written warnings and performance improvement plans are not adverse actions where they do not materially affect the terms and conditions of employment."). Because Plaintiff's compensation and terms of employment were not impacted by the PIP (Dkt. # 32 at ¶ 9; Dkt. # 34 at ¶ 27), this is insufficient to establish an adverse employment action. Plaintiff also argues that she was adversely affected by a three-month delay in receiving her career ladder promotion (Dkt. # 36 at 8; Dkt. # 36-1, Exs. E, F) and because she was not trained to perform ratings on the Nehmer project (Dkt. # 18 at ¶ 11). These

allegations are untimely, however, because they are discrete acts occurring before April 24, 2011. *Morgan,* at 113.

Plaintiff is also required to show that similarly situated employees, not within her protected class, received more favorable treatment. Plaintiff does not meet this burden. While Ms. Lassair alleges that "similarly situated younger individuals were treated more favorably then she was" she provides no specific examples. *Moran v. Selig*, 447 F.3d 748, 755 (9th Cir. 2006) ("[I]ndividuals seeking relief must demonstrate, at the least, that they are similarly situated to those employees in all material respects."). Ms. Lassair does not point to other younger employees or co-workers that were treated better. Defendant, for its part, notes that "16 Rating Veterans Service Representative[s]" were placed on a PIP between 2009-2011, and at least nine of these employees were younger than Ms. Lassair. Dkt. # 34 at ¶ 29.

Even if Ms. Lassair could establish a prima facie case of discrimination, Defendant has articulated a legitimate and non-discriminatory reason for its actions. Plaintiff's performance, as documented by several different supervisors, was below the defined quality and quantity metrics and as a result, she was issued written counseling and eventually placed on a performance improvement plan. Dkt. # 18 at ¶¶ 7-10; Dkt. #36-1, Exs. B, E, F, G. Indeed, the evidence provided by Plaintiff herself shows that her promotion was temporarily delayed because she did not meet the qualifications and requirements for promotion. Dkt. # 36-1, Exs. E, F. Similarly, Plaintiff was not trained on the Nehmer project because she was not meeting her performance standards on her existing work. Dkt. # 33 at ¶ 8. In addition, it appears Defendant made multiple attempts to accommodate Plaintiff, including granting her request to work from home (Dkt. # 34 at ¶ 18) and allowing her to perform "collateral duties" instead of rating cases although rating cases was an "essential function" of her position (Dkt. # 34 at ¶ 21).

Because Defendant has stated a legitimate nondiscriminatory reason for its actions, the burden shifts back to Plaintiff to produce "specific, substantial evidence of

ORDER-9

pretext." *Bradley v. Harcourt, Brace & Co.*, 104 F.3d 267, 270 (9th Cir. 1996). She fails to do so. Rather than rebut the evidence of her negative performance evaluations with examples of positive performance, Plaintiff simply states that she was "qualified for the position she held." Dkt. # 36 at 8. The Court cannot infer pretext from these facts. Viewing the evidence in the light most favorable to Ms. Lassair, the Court finds that she has failed to carry her burden under the *McDonnell Douglas* framework and Defendant is entitled to summary judgment on her discrimination claim.

### C. <u>Prima Facie Case of Hostile Work Environment</u>

Plaintiff also claims that she was subjected to a hostile work environment under the ADEA, but she supplies no evidence showing that the harassment she experienced was sufficiently severe to present a cognizable violation of federal law. To establish a prima facie case for a hostile work environment claim, a plaintiff must show that: 1) she was subjected to verbal or physical conduct because of her membership in a protected class, 2) the conduct was unwelcome, and 3) the conduct was sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive work environment. *Meritor v. Savings Bank v. Vinson*, 477 U.S. 57 (1986); *Manatt v. Bank of America*, 339 F.3d 792, 798 (9th Cir. 2003).

Courts must look at the totality of the circumstances when making a determination of whether a hostile work environment exists. *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998). This determination includes examining "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* at 787–88 (internal citation and quotation omitted). To constitute an actionable unlawful employment practice, the various acts comprising the hostile work environment "must have some relationship to each other." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 118 (2002). Importantly, discrete acts, such as termination, failure to promote, denial of transfer, or

ORDER-10

refusal to hire, cannot qualify as related acts. *Id*. at 108–113. Several of the allegations in Ms. Lassair's Amended Complaint relate to discrete discriminatory acts, such as placing her on a PIP or delaying her ladder increase. Dkt. # 18 at ¶¶ 8-9. As such, those allegations cannot form the basis of Ms. Lassair's hostile work environment claim. *Morgan*, at 108-113.

In addition, harassment or discriminatory acts divorced from Plaintiff's membership in a protected class cannot support her hostile work environment claim. *Sischo–Nownejad v. Merced Community College Dist.*, 934 F.2d 1104, 1109 (9th Cir. 1991) (noting existence of hostile work environment claim under the ADEA and that "[a] hostile work environment requires the existence of severe or pervasive and unwelcome verbal or physical harassment because of a plaintiff's membership in a protected class."), *abrogated on other grounds by statute as stated in Dominguez–Curry v. Nev. Transp. Dept.*, 424 F.3d 1027 (9th Cir. 2005).

Here, Plaintiff offers very few facts to support her claim that she was harassed because of her age. In her deposition, Plaintiff stated that unnamed coworkers said, "the old lady is coming" when they saw her and that it was just "around the office" that she "was the old lady." Dkt. # 31-1 at 26. Plaintiff also stated that one supervisor, Mr. Bosworth, told her that she was "not catching on fast enough" but later said that, other than Mr. Bosworth's comment, no other supervisors or coworkers said anything about her age. Dkt. # 31-1 at 28-29. This is not the type of severe or pervasive harassment sufficient to support a hostile work environment claim. *Sischo-Nownejad,* at 1104.

Ms. Lassair also submitted a declaration by Mary Crawford, Ms. Lassair's union steward, in which Ms. Crawford contends that the "VA has a common and standard harassment practice" of placing employees on PIPs because of harassment and discrimination and that Ms. Lassair was "subjected to a hostile work environment based on her age, race and disabilities." Dkt. # 37 at 3. Defendant argues that Ms. Crawford is asserting legal conclusions outside the scope of her personal knowledge and improper

ORDER-11

"expert" opinions. Dkt. # 39 at 10-11. Defendant also argues that Ms. Crawford lacks foundation to testify about many of the facts asserted in her declaration and that many of Ms. Crawford's statements conflict with Plaintiff's own deposition testimony. Dkt. # 39 at 10-11. For example, Ms. Crawford states that Plaintiff's supervisor, Mr. Dick, made comments about Plaintiff's age and "intentionally and deliberately" delayed providing certain employees feedback on their work. Dkt. # 37 at 3. But she provides no basis for the source of her knowledge.

The Court agrees that there are significant issues with Ms. Crawford's declaration. The declaration is fraught with hearsay and legal conclusions, beyond the scope of Ms. Crawford's personal knowledge. Moreover, to the extent that Plaintiff is attempting to classify Ms. Crawford as an expert, the Court is unpersuaded. The Court may consider an expert opinion only if the proposed expert's "specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. The witness must be "qualified as an expert by knowledge, skill, experience, training, or education" and may testify "if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." *Id.* Here, Plaintiff has not met her burden of establishing that Ms. Crawford is an expert. There is no evidence that a court has qualified Ms. Crawford as an expert and Ms. Crawford has not offered a method or principle that she applied to the facts of this case. Accordingly, the Court will give minimum consideration to Ms. Crawford's declaration.

The hostile work environment standard is a demanding one and the conduct must be "extreme" before it can "amount to a change in the terms and conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998). When viewed in light of Ninth Circuit precedent, the conduct complained about by Ms. Lassair does not establish the type of extreme conduct sufficient to support a hostile

ORDER-12

work environment claim. *See e.g. Vasquez v. Cty. of Los Angeles,* 349 F.3d 634, 643-44 (9th Cir. 2003) (holding that alleged harassing conduct, including two racial epithets directed at the plaintiff, was insufficient to create a hostile work environment); *Sanchez v. City of Santa Ana,* 936 F.2d 1027 (9th Cir.1990) (finding no hostile work environment despite allegations that the employer posted a racially offensive cartoon, made racially offensive slurs, targeted Latinos when enforcing rules, provided unsafe vehicles to Latinos, did not provide adequate police backup to Latino officers, and kept illegal personnel files on plaintiffs because they were Latino).

Ms. Lassair's allegations that she was denied training, her production goals were changed, she received written counseling and was placed on a PIP, and her promotion was delayed by three months, do not establish a pattern of related discriminatory conduct sufficiently severe to support a hostile work environment claim. Dkt. # 18 at ¶¶ 7-9, 11, 13; Dkt. # 36 at 4. This is especially true where the evidence shows that many of these allegedly discriminatory acts were the result of Ms. Lassair's persistent performance issues, as documented by multiple different supervisors, and a desire to accommodate her individual requests. Dkt. # 34 at ¶ 21-22, 26.

Similarly, Ms. Lassair's hostile work environment claim is not saved by her general assertion that coworkers joked about her age (Dkt. # 31-1 at p. 26:13-25) or Ms. Crawford's statements that in 2009, Mr. Dick made comments about her age (Dkt. # 37 at 3). Although offensive, such comments are not "sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive work environment." *Vasquez,* at 642.

While the Court appreciates that Ms. Lassair was unhappy in her work environment and believes she was treated unfairly, her claim simply does not rise to the level of creating a cognizable hostile work environment claim. Drawing all reasonable inferences in favor of Ms. Lassair, the evidence is insufficient to avoid summary judgment on her hostile work environment claim.

ORDER-13

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment (Dkt. # 30) is **GRANTED** and the Amended Complaint (Dkt. # 18) is **DISMISSED** with prejudice.

DATED this 16th day of October, 2019.

*Richard A. Jones*

The Honorable Richard A. Jones
United States District Judge

ORDER-14